Good morning, Mr. Desmarais.  Implied consent is the primary issue in this appeal. Specifically, the question is, did Mr. Fustolo, by failing to object to certain evidence at trial, impliedly consent to have the Bankruptcy Court decide an issue or a cause of action that was not set forth in the pleadings. As a matter of law, implied consent only exists if a party fails to object to evidence that relates solely to the new claim. My goal today is simply to explain to you why the evidence in this case related to both the new claim and the existing claim. And if I can do that, then the Bankruptcy Court's decision below to allow Patriot's post-trial motion to amend its pleadings must be reversed. In doing that, I assume you're going to stick to arguments that you've preserved? Yes, Your Honor. I hope so. In other words, that you've made below to the Bankruptcy Court. Yes, Your Honor. Mr. Fustolo was a defender of bankruptcy, as you know, and the affiliate Patriot filed an adversary proceeding seeking to deny his discharge. This type of action is governed by Section 727 of the Bankruptcy Code. Patriot's complaint against Mr. Fustolo asserted, I believe, five of the statutory causes of action for denying a discharge, including Section 727A3, which says that discharge may be denied where a debtor has concealed, destroyed, or failed to keep or preserve documents related to the debtor's financial condition without justification. 727A3 is a codification in the context of bankruptcy of the common law on spoliation. If you, as a debtor, destroy your business or financial records without justification, you will not get a fresh start and your debts will not be discharged. So this case goes forward. Patriot serves discovery. All kinds of discovery disputes Mr. Fustolo objects on Fifth Amendment grounds, among others, because there's a pending criminal action against him. Patriot files a motion to compel. Mr. Fustolo opposes on grounds of Fifth Amendment, and the court orders Mr. Fustolo to produce documents. And she does so in a way that it was designed to protect his Fifth Amendment privilege. Namely, if you are withholding documents on the basis of the Fifth Amendment, produce them in camera, give me a log so that I can rule on the adequacy of your assertions. Mr. Fustolo does not comply with that order. Patriot files a motion for sanctions, and there's a hearing in front of Judge Feeney. And it's a lengthy hearing, and she makes it perfectly clear how she feels about Mr. Fustolo, his assertion of the privilege, his failure to comply with her order. And she specifically states, the conclusion is inescapable and the inference is warranted from the record of this discovery dispute that Mr. Fustolo deleted responsive documents. Deleting records without justification is exactly the type of misconduct that falls under Section 727A3. Now, in this situation, he also violated a court order, which is a separate grounds for denying a discharge under 727A6. This is two months before trial. Patriot does not seek leave at that time to amend its pleadings. Instead, they go to trial on the existing claims. There are three pieces of evidence that we need to consider. Immediately before trial, Patriot asked the court to take judicial notice of the December 31 discovery order, which Mr. Fustolo violated, and the transcript of the hearing on the motion for sanctions, where she admonishes Mr. Fustolo and states her conclusion that records have been destroyed. We know that evidence relates to the 727A3 claim because Patriot's pre-trial memo and later its post-trial request for findings and rulings specifically rely upon the order and the transcript to argue the 727A3 claim. Also, in the joint pre-trial memo, Patriot lists as an issue to be tried Mr. Fustolo's discovery misconduct, including spoliation of evidence. And, in Patriot's counsel's opening statement, he concludes by stating that Mr. Fustolo abused the bankruptcy process, violated the court's orders, failed to preserve evidence, and therefore his discharge should be denied. And right away, as soon as he ended that sentence, the bankruptcy judge asked, do you have an A6 claim? And he said no. More on that in a bit. So what I'm hearing here is that the judge and the other side had your client dead to rights under A3, but they never had an A6 claim. The evidence that went in, you were assuming had to do with the A3 claim. And instead of pulling the trigger on the A3 claim, the judge says A6. Correct. Well, if that's all right, what good is this appeal going to do to you or your client, to your client, no matter how it comes out? Aren't you just going to go back and have the trigger pulled on the A3 claim? So I said correct, but I should have said correct, but not quite. We don't really know why the judge didn't rule on the A3 claim. And in fact, it's actually quite telling that she goes six days of trial on all of these claims, including A3, and she ends up basing her decision on an unflagged claim and says that the A3 claim and all the rest are moot. Remember, A3 includes a provision where you're only liable under A3 if you conceal or destroy evidence without justification. I haven't reviewed the entire record of appeal specifically on the A3 claim, but one would think that there must have been some problem with the evidence. Otherwise, it would have been a very simple matter for the judge to have said, you're dead on A3. Oh, and by the way, I'm going to allow this motion and you're dead on that one, too. And the fact that the judge didn't suggests, at least, that there could have been issues on Patriot's failure to prove the A3 claim. But by saying no right after the opening statement, what that means is that violating a court order must relate to an existing claim. Otherwise, there would be no reason to say that in your opening statement. And then the third piece of evidence is the trial testimony on day four of the six-day bench trial, where Mr. Fustolo was asked by Patriot's counsel, essentially, isn't it true that you were ordered to produce documents, and you did not produce those documents? That is a question about an order that's already in evidence on the A3 claim. And facts set forth in the transcript of the hearing on a motion for sanctions, where the judge has already said, because you didn't follow my order, because you didn't produce these records, I'm going to infer that you destroyed these records, you deleted these records, and therefore, she didn't say this, but that leads to the implication that he's liable under A3. It's right out of Patriot's opening statement, it's right out of their joint pretrial memo, to start asking questions about an order in evidence on a matter that is existing in the case was not all that surprising, and certainly didn't come out of the blue and did not inject a brand new, previously unasserted issue into the claim, into the case. Now, but of course, all of that evidence also supports an A6 claim, but since it supports both the A6 claim and the A3 claim, it cannot serve as the basis for a finding of implied consent. This case, procedurally, and they all, of course, turn on the facts, because the law is not that difficult, this case is unique in the sense that what this bankruptcy judge did at the very outset of the case, before the opening statements, is she delineated and had counsel agree on exactly the claims that were going to be tried. It's a beautiful piece of housekeeping, we all know why the judge did that. And then she specifically said, do you have an A6 claim? And he said no. And then at the very end of the case, after all of the evidence was in, including the evidence about the testimony about violation of the court order, she did it again, and she went through it, count by count, claim by claim. And nobody, at that point, raised A6. And I submit to the court that if Patriot's counsel had asked those questions, with the intent of eliciting testimony solely on an unpledged subject, that would have been the time to raise his hand and say, Your Honor, I've got a motion I'd like to bring. Not even the judge came to that conclusion, because she never asked again about the A6 claim. And this wasn't an even moment, this wasn't the trial ends, the parties talk to the judge, this was two days, two trial days, I don't remember the exact sequence, but it was more than two actual days after the testimony in question. Now, there's another issue besides implied consent, and that is the duty of Patriot to move in a timely fashion. And there's a lot of talk in the bankruptcy court's opinion and in Patriot's brief about how Mr. Fustola was on notes from the moment he violated that order, from the moment there was the hearing on the sanctions motion in March, two months before the trial, Mr. Fustola was on notice that an A6 claim was a possibility. And of course that's true. But Patriot, the plaintiff in this case, was on notice as well. It's Patriot's duty, once the factual predicate for a claim is known, and if Patriot wants to bring, to amend its complaint, to bring a new claim, Patriot has the duty to do so timely, and if it doesn't do so timely, it has a duty to explain why. And in this case, certainly in the bankruptcy court, Patriot, there's no explanation whatsoever. In the district court, on the initial appeal, Patriot provided no explanation whatsoever, and the district court didn't even address the issue. And then here, in this brief, Patriot sets forth the reason, which isn't supported by the record, but even if it's true, it proves our case, because the reason is, we were too busy preparing for trial, which can't be an excuse, because every single lawyer preparing for every single trial is too busy, and we didn't want to give Mr. Fustola an opportunity to seek another continuance. Well, that means that they knew they had an A6 claim, and they intentionally, for strategic reasons, decided not to bring it, even though they knew they had it, and that's also improper. At the end of the day, Your Honors, this is really a due process issue. Defendants are entitled to know the claims that are being asserted against them. They shouldn't have to guess. They shouldn't have to cobble it together from various pieces of evidence. And if you read the bankruptcy court's opinion, certainly, you come away with the conclusion that Mr. Fustola is not exactly a sympathetic party, and the bankruptcy court was extremely distressed with the way he dealt with his discovery obligations and dealt with her orders. But by protecting Mr. Fustola's due process rights in this situation, you're ensuring that all debtors who face a discharge complaint will be treated fairly and will not be subject to claims which were not initially pleaded on the grounds of implied consent. I'd be happy to answer any questions you might have. Otherwise, I'll wait for my rebuttal. Thank you. Thank you. Mr. Siegel, good morning. Good morning, Your Honors. May it please the Court. The first thing I'd like the Court to consider is pages 8 to 11 of the addendum to our brief, because it actually contains the opposition that Mr. Fustola filed with Judge Feeney, and virtually every argument that you've heard from Mr. Desmarais was not raised to Judge Feeney. So they want to criticize Judge Feeney's order based on arguments that they never raised to her. So I have a fundamental problem with that. The next is? When you say not raised, they did say that the matters presented at trial supported other matters that were before the Court. He said that several times, and therefore implied consent cannot be found. And what the other issues that they specifically identified was? They said that we were trying to introduce the order to blunt testimony that was going to be given by certain witnesses and to basically, in an effort to shore up any issue with respect to a purported whistleblower claim, which is not a 72783 claim. I think if you look at the 8 through 11, you won't see the section 11, section 72783 even referenced in the entire opposition that they filed. But wasn't this evidence of the noncompliance of the court order relevant to this spoliation claim? Why not? No, because what happens is, Your Honor, there were so many violations of court orders and various issues. And the Court specifically said this in her opinion. If we look at the January 9th opinion, she says, look, Mr. Pistola is trying to capitalize on the fact that he engaged in so much discovery violation that he's basically lumping them all together. So there are discovery violations that went to various claims and issues. The protocol violation, the protocol, the providing of documents to the court so the court could do an in-camera review to determine whether the records he was withholding were actually relevant to any claim is what he thwarted. If a court orders you to produce documents and you fail to do so, isn't that a grounds for barring you from producing those same documents at trial? Yes, and we obtained some relief in that respect. I think if you look at the May 18th order. Let me stay with it. Didn't you ask, didn't you want him barred at trial from producing certain materials? Yes. And so wasn't the fact that he disobeyed the court order relevant to that issue? No, because none of the claims that we brought had violation of the court order as an element of the claim. All the claims we brought were based on the two- But you mentioned it in your opening. We mentioned it in our opening because we- So you didn't have to feel it was relevant. We think it is relevant because spoliation and destruction and fabrication, all of which Mr. Festolo did, is not the same thing and is separate and apart from the protocol violation. So we could, without even referencing the protocol violation, which is if you look at that query on the fourth day of trial, was specifically about the protocol violation. Let me ask you this. During your opening, in an opening we're only supposed to mention things that are relevant to a case. In your opening, you plainly and clearly mentioned his failure to comply with the court order. What did you have in mind that was relevant to it? We had in mind that there was a section 349 request that we were making to make sure that he had a dismissal with prejudice. That would then prevent him from later trying to refile for bankruptcy at some period of time to later try to seek further discharge. So we were raising the issue to basically hammer home to the court that we're going to be saying a lot of things. And certainly, when the court's assessing intent claims, like the fraudulent transfer claims and other issues, and as the court said, I've inferred his refusal to comply based on the totality of his conduct. It was that the totality of his conduct and his discovery of his conduct was definitely relevant to claims. The issue that we raised on the fourth day was a protocol violation. What documents did he withhold? I don't have your Ouija board, Your Honor. I don't know what documents he withheld. I have no idea if the documents he withheld are relevant to any claim. And that's what Judge Feeney was complaining to Mr. Festool about. I'm the judge. You're not the judge. You cannot unilaterally invoke a privilege. You cannot unilaterally invoke a privilege, then seek to avoid a discharge based on an exception that is based on the proper application of that privilege. The law is clear in this circuit and all circuits around the country. The judge determines whether or not the privilege is properly invoked. And the protocol violation, which was discussed on the fourth day, is not relevant to any other claim. It's relevant to one issue only, the failure to submit for in-camera review the documents so that the judge could do its job. And so that is not an issue that is relevant to any other claim. And here's another thing to consider. The criminal proceeding was about criminal harassment and witness intimidation. 727.83, if we read the statute, has to do with financial records and the financial condition. There was absolutely no way to infer that his invoking of the Fifth Amendment related to a witness intimidation and harassment case could have anything to do with financial records. Let me ask you another question. The judge's order that's at issue here, in order to produce his own emails. Correct. That strikes me. Isn't that an order that requires someone to do something that's testimonial? No, because it's not testimonial for Fifth Amendment privilege purposes until the court makes an assessment of whether it would trigger his Fifth Amendment rights. So the court has to look at it and... The court says producing documents. There are two things you need for the Fifth Amendment. You need testimonial and you need potentially incriminating. Correct. I think the courts have held that turning over your own documents is testimonial because it authenticates them. It represents that they exist. It does that. It's not necessarily a violation of the Fifth Amendment, though, because they might not have the ability to incriminate. So an in-camera proceeding can eliminate that basis. It still doesn't mean that they're not testimonial. I would say that that's actually, in my view, incorrect. It doesn't become testimonial because the... First of all, if it was testimonial to some degree, there could be a potential waiver of the Fifth Amendment. Here, you have an in-camera process that essentially puts the... Do you have any precedent that says the in-camera nature of the process not only mitigates the self-incriminating prong, but it suddenly renders the production of the documents themselves to be non-testimonial? Well, I would cite... There's numerous cases I cite in this brief, and the brief says that the proper way to deal with this, or one proper way to deal with this, is through an in-camera inspection. Right, because that takes care of the incriminating. But none of those cases, I think, unless you're pointing to some language that isn't in your brief, none of those cases say that it turns it to a non-testimonial act. I think that if we go back and... I don't have the cases right here with me, but you know what? If I think we go back to what those cases are, they're basically saying, if I don't know what Mr. Fistula has produced, and if his rights are fully preserved... Except you know it's his e-mails. Was that...? You know it's his e-mails. Well, I only know what he said aloud to the court. The court knows that it's compelling him to produce e-mails. The court knows it's compelling him to produce documents, and unless the court has a Ouija board, like Your Honor, she's not going to know what he's actually going to do. He's saying whatever he needs to say in order to avoid the production of materials, right? Whether he is actually saying any of this is actually true or not, no one actually knows because he never made any proffer. Let me ask this. If it is testimonial, then would you agree that there's no A6A claim here? Because A6A simply doesn't apply to orders to testify. Right. If you're saying that I'm wrong, and that it is in fact an order to testify, then it cannot not be an order to testify. Yeah. So if I'm putting a tautological sort of situation where we decided that it is an order to testify. Let me put it this way. Do you agree that the application of A6A pivots on whether you're right or wrong on whether it's testimonial? Let me take a look at A6A. It says refuse to obey any lawful order of the court other than an order to testify. So my question is, do you agree that if this is an order to testify, then you're out of luck on A6A? Well, under 726A, under the standard of review, and I would agree with that, but under the deferential standard of review where we use a discretion, where we look to see in the record if there's anything in the record that would support upholding the court's order, which is not the way that Fistula argues the appeal. It's resolving all inferences in his favor. But if we actually apply the real standard of review, then basically the court could go down the various 6A, B, or C, and there would be a basis because at some point it says. But now you want us to amend your claim yet again. You specifically pled an A6A claim, not an A6 whatever. I'm not asking for anything other than the application of the standard of review, which is. Which would be what? It would be we affirm the district court's order on any basis that could be. Including the claim that it never was pled before. Correct. That is in fact in the standard of review. Because the point is to do what we can to affirm the order when it's abuse of discretion. Thank you, Your Honor. Thank you, Your Honor. I only have one point to make on rebuttal. Mr. Siegel talks about the protocol violation. And all they were asking about at trial was the protocol violation. The protocol violation was a failure to produce documents. Whether it was in camera or out of camera, it was a failure to produce documents. And as a result of that failure, the court said she would. And they asked her to infer that there was a concealment and a destruction of records. That's A3 all day long. Thank you.